UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KIMBERLY K SHATTUCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03978-TAB-JMS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON SHATTUCK'S BRIEF IN SUPPORT OF APPEAL

### I.  Introduction

Plaintiff Kimberly K. Shattuck appeals the Administrative Law Judge's denial of her application for disability benefits.  Her claim stems from a heart attack she suffered on December 8, 2013.  The issue on appeal is whether the ALJ erred by rejecting the opinions of Dr. Marco Caccamo, Shattuck's treating cardiologist, and Dr. Jason King, Shattuck's family physician. Both doctors testified that Shattuck must frequently elevate her legs throughout the work day, but the ALJ did not include this restriction when calculating Shattuck's residual functional capacity.  In her decision, the ALJ erred by failing to properly consider Dr. Caccamo's status as a treating cardiologist, by failing to properly weigh medical opinions, by playing doctor, and by failing to build a logical bridge between the evidence and her rejection of Shattuck's claimed need to frequently elevate her legs.  Therefore, the Court grants Shattuck's request for remand. [Filing No. 19.]

### II.  Background

In evaluating Shattuck's claim, the ALJ used the Social Security Administration's five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a) (explaining the five-step process).  At step one, the ALJ determined that Shattuck had not engaged in substantially

gainful activity since her heart attack.  At step two, the ALJ determined that Shattuck is severely impaired with ischemic heart disease, cardiomyopathy, obesity, and thyroid disorder.  However, at step three, the ALJ determined that Shattuck's combination of medical issues does not meet the severity requirements of the listed impairments, so Shattuck is not presumptively disabled. 20 C.F.R. pt. 404, subpt. P, app. 1.  Instead, the ALJ proceeded with the analysis by evaluating Shattuck's RFC, meaning her ability to perform physical and mental work activities despite her impairments.  20 C.F.R. § 404.1545(a)(1).  The ALJ determined that Shattuck is restricted by various physical limitations but has the RFC to perform sedentary work.  The ALJ did not follow the findings of Dr. Caccamo, Shattuck's treating cardiologist, and Dr. King, Shattuck's treating family physician, that she must frequently elevate her legs during the work day.

At step four, the ALJ determined, based on testimony from a vocational expert, that Shattuck does not have the RFC to perform the work activities her prior employment required. Finally, at step five, the ALJ determined that Shattuck is capable of making a "successful adjustment" to other jobs that exist in significant numbers in the national economy.  [Filing No. 17-2, at ECF p. 26-27, R. at 25-26.]  This determination was made based on Shattuck's age, education, work experience, her RFC, and testimony from the VE.  In questioning the VE, the ALJ specifically asked whether these jobs would be available to someone that must elevate their legs frequently throughout the day.  The VE stated there "would be no work" available for anyone in Shattuck's position that had to frequently elevate their legs more than six to twelve inches during the work day.  [Filing No. 17-2, at ECF p. 59-60, R. at 58-59.]

Therefore, the issue in this case is whether the ALJ properly evaluated Shattuck's claimed need to frequently elevate her legs.

### III.    Discussion

Shattuck argues that substantial evidence does not support the ALJ's rejection of the limitation endorsed by Shattuck's treating cardiologist and treating family physician that she must frequently elevate her legs throughout the day.  In support of this argument, Shattuck contends that the ALJ failed to consider Dr. Caccamo's status as a treating cardiologist, failed to properly weigh relevant medical opinions, played doctor, and failed to build a logical bridge from the evidence to her rejection of the treating physicians' restriction.  Shattuck's arguments are persuasive.

On review, the Court exercises deference and evaluates whether the ALJ's decision is supported by "substantial evidence."  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1979)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* This means that substantial evidence is "more than a mere scintilla but may be less than a preponderance" of the evidence.  *Id.*  However, the Court will not "reweigh the evidence or substitute [the Court's] judgment for that of the ALJ."  *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (quoting *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)).  Instead, the Court will analyze whether the ALJ performed her duty to "build a logical bridge from the evidence to [her] conclusion."  *Id.* (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

#### A.  The ALJ failed to give Dr. Caccamo his due consideration

Shattuck argues that the ALJ failed to afford Dr. Caccamo due consideration as a treating physician or as a cardiology specialist.  The Deputy Commissioner counters by pointing out that the ALJ cited to Dr. Caccamo's opinion.  The Deputy Commissioner claims that this fact demonstrates the ALJ's knowledge of Dr. Caccamo's status as a treating physician, his long treatment history with Shattuck, and his specialty as a cardiologist.  The Deputy Commissioner

further argues that the ALJ is not required to explicitly weigh every factor listed in the regulation when assessing the medical opinion of a treating physician.

A physician is considered a "treating" physician if they are the plaintiff's "own acceptable medical source" and the physician has provided medical treatment sufficient to form an "ongoing treatment relationship" with the plaintiff. 20 C.F.R. § 404.1527(a)(2).[1] Generally, treating physician opinions are given greater weight because they "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from individual examinations" by non-treating physicians. § 404.1527(c)(2). Additionally, the ALJ "generally gives more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty." § 404.1527(c)(5). The "opinions of non-treating generalists may not generally overcome those of the treating specialist unless the specialist's opinions are inconsistent with the substantial record." *Israel v. Colvin*, 840 F.3d 432, 441 (7th Cir. 2016).

When determining a plaintiff's RFC, the ALJ must review "all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). In other words, the ALJ must consider all regulatory factors to the extent applicable to the present case. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). Although this Court's review is deferential, it "cannot uphold an administrative decision that fails to mention highly pertinent evidence." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (per curiam) (holding that "all relevant evidence" must be considered)).

---

[1] The SSA modified the regulation surrounding treating physicians. However, this regulation applies to claims filed before March 27, 2017, and Shattuck filed her claim on March 26, 2014.

The ALJ did not properly consider Dr. Caccamo's status as a treating physician. The Deputy Commissioner argues that merely citing to Dr. Caccamo's opinion is sufficient to recognize his status as a treating physician. While the Deputy Commissioner's brief concedes the fact that Dr. Caccamo is a treating physician, the record does not indicate that the ALJ considered Dr. Caccamo's status. The ALJ explicitly refers to Dr. King and Dr. Bhakta as treating physicians but makes no mention of this designation when evaluating Dr. Caccamo. [Compare Filing No. 17-2, at ECF p. 24, R. at 23 (making no mention of Dr. Caccamo's treating cardiologist status), with Filing No. 17-2, at ECF p. 25, R. at 24 (referring to Dr. King's opinion as a "treating physician's opinion" and referring to Dr. Bhakta as "claimant's treating cardiologist").] Merely citing to the doctor's opinion does not lead to the conclusion that the ALJ considered Dr. Caccamo's status as a treating physician. The ALJ erred by failing to mention this highly pertinent information.

The ALJ also erred by failing to consider Dr. Caccamo's relevant specialty as a cardiologist. While the above analysis also applies to the ALJ's failure to mention Dr. Caccamo's relevant specialty, the Deputy Commissioner adds the argument that the ALJ is not required to explicitly weigh all factors when assigning weight to Dr. Caccamo's opinion. The Deputy Commissioner cites to *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), in which the ALJ's failure to explicitly weigh each factor was not error. But there was no error because the ALJ gave "sound explanation" for rejecting the treating physician's opinion by showing he was aware of and considered the relevant factors, including the treating relationship, consistency with the record, and the supportability of the opinion. *Id.* The Deputy Commissioner also cites a footnote in *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012), in which the ALJ's failure to explicitly discuss every factor was not grounds for remand.

But *Henke*'s treating physician's opinion was so overwhelmingly inconsistent with the record, including his own treatment notes, that discussing the other regulatory factors would have been superfluous. *Id.*

While the Deputy Commissioner is correct that the ALJ may not have to explicitly weigh every factor, the ALJ must still provide a logical bridge when rejecting a treating physician's opinion. *See Schreiber*, 519 F. App'x at 959 (determining that the "inquiry is limited to whether the ALJ sufficiently accounted for the factors" necessary to build a logical bridge). *Schreiber*'s ALJ built a logical bridge to the conclusion by making it "clear that he was aware of and considered" the relevant factors including the doctor's treating relationship. *Id. Henke* applied the same logic. *Henke*, 498 F. App'x at 640 n.3. *Henke*'s ALJ did not explicitly weigh every factor, but her reasoning showed why the doctor's inconsistency with the record was the overwhelmingly relevant factor. *Id.* These cases are consistent with *Parker*, 597 F.3d at 921, which held that the ALJ is required to consider highly pertinent information. ALJs may not be required to explicitly weigh every factor, but in some instances, individual factors are highly pertinent and must be examined when building a logical bridge to the conclusion.

In the present case, the ALJ failed to consider Dr. Caccamo's status as a treating physician with a cardiology specialization, which is directly relevant to Shattuck's alleged need to frequently elevate her legs during the work day. Unlike *Henke* and *Schreiber*, it is not clear that the ALJ considered the relevant factors or, for that matter, any of them. And unlike *Henke*, there was not one overwhelming factor that excused consideration of the others. Rather, Dr. Caccamo's status as a treating cardiologist remains highly pertinent and must be considered. The ALJ erred because she did not consider this factor.

**B. The ALJ did not weigh the relevant medical opinions**

Shattuck argues that the ALJ's decision is not supported by substantial evidence because she did not properly weigh the various medical opinions. Shattuck contends that the ALJ applied the wrong legal standard and did not weigh the required relevant factors. The Deputy Commissioner argues that the Court should uphold the ALJ's decision to discount Dr. Caccamo's testimony unless there is patent error. The Deputy Commissioner's arguments are not persuasive.

The ALJ should consider all relevant regulatory factors when determining the amount of weight given to any medical opinion, unless a treating physician is due controlling weight. 20 C.F.R. § 404.1527(c). The opinions of Dr. Caccamo and Dr. King on the "nature and severity" of Shattuck's restriction are due controlling weight if they "[are] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." § 404.1527(c)(2). However, if the ALJ does not afford the opinion controlling weight, she must consider several regulatory factors to determine how much weight to afford a treating physician. *Id.* These factors are "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)). The ALJ may also consider any other factors "which tend to support or contradict the medical opinion." § 404.1527(c)(6). The resulting decision must be supported with "good reasons." § 404.1527(c)(2). On review, the Court upholds decisions that are supported by substantial evidence. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018) (remanding because substantial evidence did not support the ALJ's decision to afford a medical opinion little weight).

The ALJ failed to properly weigh the medical opinions of Drs. Caccamo, King, and Bhakta as they pertain to Shattuck's claimed need to frequently elevate her legs during the work day. The ALJ failed to weigh any of the regulatory factors for comparing treating physicians, including the length of the relationship, the frequency of examination, the nature and extent of the relationship, or the fact that Dr. Caccamo is a treating cardiology specialist. The ALJ briefly discussed the doctors' opinions as they related to other limitations. [Filing No. 17-2, at ECF p. 25-26, R. at 24-25.] However, that discussion did not rise to the level of weighing factors and does not excuse the ALJ from weighing the regulatory factors as they pertain to Shattuck's claimed need to elevate her legs. The Deputy Commissioner contends that the ALJ cited to Dr. Bhakta's finding that Shattuck was "doing very well from a cardiovascular standpoint." [Filing No. 23, at ECF p. 7.] However, Dr. Bhakta never opined on, or refuted, treating cardiologist Dr. Caccamo's and treating family physician Dr. King's opinions that Shattuck frequently needs to elevate her legs during the work day.

The Deputy Commissioner contends that the Court should only remand if the ALJ's reasons for the weight given to the doctor's opinions were patently erroneous. Even if the Court were to apply the patent error standard, it would still remand. Failing to follow the regulation requiring the ALJ to weigh specific factors is patently erroneous. While the ALJ may have weighed some of the regulatory factors as they pertain to other restrictions, she did not weigh any of the factors as they pertain to Dr. Caccamo's and Dr. King's opinions that Shattuck needs to frequently elevate her legs during the work day.

Shattuck also contends that the ALJ must provide a "particularized rationale" for rejecting Dr. Caccamo's and Dr. King's opinions instead of merely offering general references to clinical findings, progress notes, and treatment history. [Filing No. 19, at ECF p. 12.] In

response, the Deputy Commissioner argues that the ALJ extensively discussed the medical evidence throughout the decision and is not required to neatly pack the discussion into a single section of the decision. The ALJ is not required to artfully organize her decision; instead, the Court "read[s] the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citation omitted). Still, the ALJ is required to explain how the evidence leads to her conclusion. *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011). The ALJ did not explain how the cited medical evidence logically leads to the weight she afforded each doctor. This is error.

### C. The ALJ played doctor

Shattuck argues that the ALJ played doctor by assuming that a medical fact contradicted Dr. Caccamo and Dr. King's testimony. Specifically, the ALJ reasoned, without support, that an ejection fraction stabilized at 36% contradicts the treating physicians' endorsed restriction that Shattuck must frequently elevate her legs during the work day. [Filing No. 17-2, at ECF p. 25-26, R. at 24-25.] The Deputy Commissioner does not argue that the ejection fraction being stabilized contradicts the treating physicians. Rather, the Deputy Commissioner merely argues that the ALJ's finding that the ejection fraction was stabilized at 36% was adequately supported by the testimony of an agency doctor.

"ALJs must not succumb to the temptation to play doctor." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). They "are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). This means that ALJs are not permitted to "assume a connection" between medical evidence and their own resulting opinions. *See Engstrand v. Colvin*, 788 F.3d 655, 660-61 (7th Cir. 2015) (holding that the ALJ played doctor by assuming "that, because [the plaintiff] could feel the 10-gram monofilament, he must be lying about his neuropathy, but there [was] no

evidence that the two were mutually exclusive.").  Additionally, "an ALJ must sufficiently articulate his assessment of the evidence to assure [the Court] that the ALJ considered the important evidence . . . [and to enable the Court] to trace the path of the ALJ's reasoning." *Rohan*, 98 F.3d at 971 (internal quotation marks and citations omitted).  If the Court is "unable to discern how—apart from substituting his own judgment for that of the medical witnesses—the ALJ reached his determination . . . [the Court] must reverse and remand for further proceedings." *Id.*

The ALJ improperly played doctor when she assumed a connection between an ejection fraction stabilized at 36% and the lack of a need to elevate Shattuck's legs.  While this connection might exist, the ALJ failed to point to any expert opinion suggesting that an ejection fraction stabilized at 36% contradicts Shattuck's alleged need to frequently elevate her legs during the work day.  The ALJ also cited to treatment notes reporting "no ongoing or significant chest pains, palpitations, edema, or syncope" [Filing No. 17-2, at ECF 25, R. at 24], but the decision lacks any explanation of how this evidence is inconsistent with Dr. Caccamo's and Dr. King's opinions that Shattuck must elevate her legs.  The Deputy Commissioner explains that the existence of the stabilized ejection fraction was determined by an agency physician.  This argument misses the point.  The question before the Court is not whether the supporting evidence is credible, but whether the ALJ relied on her own lay opinion instead of the judgment of medical experts to construct the path to her conclusion.  Because the ALJ failed to cite any evidence to connect a stabilized ejection fraction to Shattuck's claimed need to elevate her legs, the Court cannot discern how the ALJ reached her determination.  Therefore, the ALJ must have impermissibly played doctor to reach this conclusion.

**D. The ALJ did not build a logical bridge to her conclusion**

Shattuck argues that the ALJ failed to justify her rejection of the restriction that Shattuck must frequently elevate her legs during the work day. She contends that the ALJ did not create a logical bridge from the cited medical evidence to her conclusion. Shattuck contends that the ALJ's citation to musculoskeletal exams that consistently show normal range of motion and full strength does not refute her claimed need to elevate her legs. The Deputy Commissioner responds that it was not error to include consistently normal musculoskeletal examinations in the ALJ's list of reasons for rejecting the restriction. Additionally, the Deputy Commissioner points to the ALJ's discussion of clinical records showing clear lungs, normal muscle strength, and Shattuck's ability to manage mild exertion. Shattuck counters that this evidence is immaterial to the restriction endorsed by Dr. Caccamo and Dr. King.

The ALJ erred by failing to explain and logically bridge the cited evidence to her conclusion. The ALJ must explain how the cited evidence leads to her conclusion. *See Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (finding that the cited observations were either unsupported or irrelevant to the ALJ's conclusion). In reaching her decision, "the ALJ must build a logical bridge to [her] conclusion." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (internal quotation marks and citation omitted). Shattuck argues that musculoskeletal exams, clear lungs, normal muscle strength, and shortness of breath have nothing to do with Shattuck's need to elevate her legs. However, the Court does not need to determine whether this medical evidence is relevant. Rather, the ALJ's decision must lay out the reason why the cited evidence is relevant to her conclusion. The ALJ failed in that duty. Nothing in the record indicates how the cited medical evidence is relevant to restrictions based on heart conditions.

The Deputy Commissioner repeatedly points to other unchallenged aspects of the ALJ's decision, including how much time Shattuck would miss work and her ability to perform

household chores, among other things.  However, this evidence does not refute Shattuck's argument.  The ALJ did not connect this evidence to her reasoning regarding the restriction at issue, and Shattuck has not challenged the ALJ's discussion of this evidence.

Finally, Shattuck contends that the ALJ erred at step five, which requires the ALJ to determine if there are any jobs available in the economy for someone with Shattuck's RFC. 20 C.F.R. § 404.1520(a).  Specifically, Shattuck contends that, because the ALJ erred in calculating Shattuck's RFC, she then erred in determining what jobs, if any, were available to someone in Shattuck's position.  At the hearing, the ALJ asked the VE about a person's ability to work if she were required to frequently elevate her legs.[2]  [Filing No. 17-2, at ECF p. 56-60, R. at 58-59.]  The VE testified that such a requirement would preclude employment.  [Id.]  But the ALJ rejected Shattuck's claimed need to frequently elevate her legs during the work day and determined that her RFC did not preclude employment.  The ALJ erred in this rejection.  As a result, the ALJ erred in using the unsupported RFC to determine Shattuck could work.

## E.    Conclusion

For these reasons, the Court grants Shattuck's request for remand.  [Filing No. 19.]  The Deputy Commissioner's decision is remanded pursuit to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

6/8/2018

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.

---

[2] The ALJ also asked the VE if someone in Shattuck's position could work if they only needed to elevate their legs six to twelve inches.  The Court notes that the ALJ did not discuss how high Shattuck claimed she needed to elevate her legs.